Cunningham, Presiding Judge.
On July 10,1909, defendants in error, Crouch & Case, filed their complaint in the district court to recover from *368 the plaintiff in error, Schon, the sum of three hundred thirty ($330) dollars. The complaint contained two causes of action, both being-based upon the same transaction. The first cause of action was for money had and received;' the second for money paid by mistake. The facts involved present for our consideration a somewhat unusual case. Stated as briefly as may be they are substantially as follows: (We shall, for convenience, treat Crouch as the sole plaintiff, and from time to time will allow his name to stand for the partnership, while the plaintiff in error, Schon, will be referred to hereinafter as the defendant.)
On or about the 21st day of December, 1908, the defendant owned a building in the city of Pueblo, which was situated upon land belonging to a third person, defendant paying rent for the lot on which this building stood. This building he occupied as a butcher shop and grocery store, he owning the fixtures therein. At about the time last aforesaid Crouch, representing the partnership of Crouch & Case, entered into an agreement with Schon, by the terms of which the former purchased from the latter the stock" of meats and groceries and a safe, agreeing to pay therefor the sum of $697.27, the value of the safe being $40. As a part of the same agreement it was provided that Crouch should rent the building and fixtures from Schon for one year, paying therefor $55 per month, $25 of this sum being for ground rent which Schon was obligated to pay the owner of the lot. One-half of the first year’s rent, or $330, Crouch was to pay in advance., It will thus be seen that under the first agreement (there was a second agreement to which we shall presently refer) Crouch was obligated to pay Schon in cash for the stock of goods $657.27, for the safe $40, for the half year’s rent cash in advance $330, or a total of $1,037.27. On or about the first day of January, Crouch entered into possession of the stock of goods, at which time he paid- $600 *369 to Schon, which was in addition to $100 paid at the time the agreement was entered into, leaving a balance.dne to Schon of $327.27. It was further agreed between the parties that Crouch might buy the building at the end of six months, or at the end of the year’s lease. It is not quite clear which of the two dates for the exercise of the option was intended, and no writing was entered into at the time or afterwards which embraced any of the conditions or provisions of the first agreement. There arose some slight difference between the parties at the time Crouch took possession of the store, which prevented the execution of a written agreement. On or about January 21, 1909, some three weeks after the plaintiffs had taken possession of the store, Crouch took up with Schon the matter of buying the building then without further delay. It will be well to quote from the abstract literally what occurred between the parties at this time. Schon testified on this point as follows:
“He (Crouch) came down and he says, ‘Wouldn’t you just as well .sell this building now as to wait,’ and I says ‘Yes, I will sell it now.’ He says, -‘What do you want for it.’ I said, ‘$350.00,’ and he said if he could buy it he could turn it quicker. I says, ‘You can have it; all you have got to give me is $350 and pay the taxes and some insurance policies.’ And we made out how much was coming to me, and he fussed around about $25 ground rent. I says, ‘You give me that money and you can have it. If you don’t, leave it alone.’ And he agreed to give me all the money I asked, and gave it to me, and I was satisfied. He paid me at that time $863.77. That is the amount I demanded he should pay. I would not take five cents less either. He. did not have to buy the building. I did not push the building on him. .He came to me and said he wanted to buy it. I told-him he could have it for $350, and if he gave me $350 he could have the building. The *370 $864.77 was made up of merchandise, fixtures and the store building. ’ ’
Schon testified further:
“I required them to pay me all that they had agreed to pay me theretofore and $350 in addition for my building. That is what we agreed to. I would not sign any paper before that. I asked $350 besides what they owed me, and I told them I would not sign any papers unless they paid it. He (Crouch) came and wanted me to sign the papers and I would not unless he gave me $350 in addition to what they owed me. ’ ’
There was no attempt on the part of Crouch to contradict this testimony. On the contrary, Crouch himself, while on the stand, testified:
“At the time I paid Mr. Schon the check for $863.77 ■he said he would not take less than $863.77 to settle up with us. I don’t know as he said that amount several times. We had argument over the taxes, but not over the total amount.”
There were but three witnesses called in the case, and, as we read the record, only the testimony of Crouch and Schon is really of much importance. Singular to relate, there is no substantial conflict in their testimony.
The second and last agreement took place in a law office, and at that time and place Crouch gave a check to Schon for $863.77. This sum was made up by adding to the $350, at which Schon had priced the building, $161.50 the amount Crouch agreed to pay for the fixtures, one month’s ground rent $25, and $327.27 the balance due to Schon from Crouch on the first agreement which involved the purchase of the groceries and safe, and the payment of six months’ rent in advance. As a part of the second agreement the lease of the lot was transferred by Schon to Crouch, the latter binding himself to pay the rent as it *371 fell due to the owner of the lot, and thereby .Crouch became the sole owner of the building, store fixtures and the leasehold, in all respects the same as Schon owned them before any negotiations had been entered into between the parties, the transfer of the lease having been made with the consent of the owner of the land.
At the time of the last agreement, when the parties were in the law office, in order to arrive at the exact balance due Schon from Crouch by virtue of the first agreement, Crouch telephoned to his partner, and Schon telephoned to his wife, each apparently in the presence and hearing of the other. Each received the same information, viz.: that there was a balance of $327.27 due to Schon on the first contract. Crouch testified as follows:
“I paid the $863.77 at the law office of McCorkle. At that time an itemized statement of the amount due Mr. Schon was made up. I presume the amounts were dictated by me.”
The “itemized statement of the amount due Schon” evidently referred to the items which aggregated the $863.77, for which Crouch gave his check, and included the $327.27, the balance due on the first agreement. According to Crouch’s testimony, some time in July, about six months after the second and last transaction, in going over their papers he and his partner, Case, discovered that they had paid Schon too much money; that inasmuch as they purchased the building some three weeks after' they had taken possession of it, they ought, he contends, to have received credit on the purchase price of the building for the $330 which they had paid as six months’ advance rent on the building and ground. At this point, it will be remembered that by the terms of the second agreement Crouch assumed all responsibility for the payment of the ground rent from and after the date of the agreement, and. released Schon therefrom. Upon making this' discovery Crouch consulted an attorney, made a demand *372 upon Schon, for the return of the $330, and, meeting with no encouragement, instituted this suit against Schon.
The case was tried to the court by agreement without a jury. The trial judge rendered judgment in favor of the plaintiff for $300, deducting $30 from his demand, apparently for one month’s rent of the building, the plaintiffs having occupied the same for three weeks- of that month while the building remained the property of Schon. .From this judgment the defendant brings the case here for review by writ of error.
As we read the record, there is no evidence whatever that Schon.received a dollar more at the time of the last settlement than he was demanding. He was under no obligation to dispose of the building at that time. There is not a word of evidence to support the theory that there was any mistake whatever on the part of Schon. There is no evidence in the record of any mistake on the part of Crouch at the time of this agreement, save and except his own statements to that effect. But, granting that he did overlook the fact that he paid $330 to Schon for advance rent, and that if he had bethought himself of this matter he would not have purchased the building at all unless he had received credit for that amount, it by no means follows that he, Crouch, can maintain an action either for money had and received, or money paid through mutual mistake. To permit him to do so would result, in this case, in allowing him to retain the property of Schon, and pay for it a sum of money which Schon would not willingly have accepted. In other words, it amounts to the court making a contract between the parties to which one of them would never have voluntarily assented. The hardship to Crouch of requiring him to pay $350 for a building on which' he had paid the rent for six months in advance can only be relieved, if at all, by a rescission of the contract into which he inadvertently entered, through no apparent persuasion or deception on the part of Schon. .The *373 parties were dealing at arm’s length; Schon had a right at any time before six months or one year, as the case may be, to place whatever value he pleased upon his building. Crouch might pay this price or wait until the option period had expired and take the building at $350, the price stipulated in the original option agreement. He himself testified, when on the stand, that when he approached Schon with a view of buying the building, the latter told him that ‘he would not take less than $863.77 to- settle up with us.’ Not one word appears to have been said by either party about the refunding of any rent that had been paid in advance. Crouch did not rely on Schon for his information as to the balance due the latter upon the first agreement, but telephoned to his partner, who kept their books, and received the information in this manner. Counsel for Crouch vigorously argues the foolishness of Crouch’s conduct, if we assume that he voluntarily and knowingly agreed to pay $330 by way of advance rent on a building which he was buying and paying for and acquiring title to. This absurdity on the part of Crouch is more apparent than real. In fact, it is nó more absurd than his.first agreement, whereby he obligated himself to pay $30 a month rent for twelve months, or a total of $360, on a building that could have been bought for $350. If the option period of the original agreement expired in six months, as Crouch testifies, then all that can be said of Crouch’s conduct in agreeing .to pay $350 for the building some five months before the option period expired is that he advanced $350 five months before the time when he was obligated to pay it in order to secure title thereto. This conduct on his part is not extraordinary, in view of the fact that as a part of this second agreement, whereby this sum was so advanced, he acquired the fixtures of the store at a price satisfactory to him, which fixtures Schon had not obligated himself in the option to sell, and managed to acquire the transfer of the lease from Schon to *374 himself, with the consent of the owner of the property, and this lease the records shows, the owner had reserved the right to cancel on sixty days’ notice to Schon. Presumably Crouch in the five weeks that intervened between the making of the first and the 'second contracts had an opportunity to test to his satisfaction the profitableness of the business which he had purchased. Furthermore, Schon testified, and this testimony, like all the rest that he gave, was not contradicted, that Crouch gave at the time of the second contract as one of his reasons for desiring to purchase the building then, that, “If he could buy-it he could turn it quicker” — indicating that he had in mind a sale.
But it requires no speculative argument to disclose the inherent error in the judgment of the trial court which required Schon to return the plaintiff’s money, which he had obtained from the plaintiff through no fraud or deceit, but as the result of a contract which he, Schon, thoroughly understood, and at the same time permitting the plaintiff to retain the property of Schon, when there is nothing in the record to indicate that he, Schon, would have parted with his property for any less than that which he received for it. Indeed, the probabilities are all against the assumption that Schon would have consented, had Crouch made such a demand, to credit the advance rent which he had received for the building on the purchase price thereof.
Leaving out of the question the fixtures, which it may be assumed Crouch took over at a fair valuation, since he makes no complaint on that score, we have this situation: Schon had rented his building for one year at $30 per month; he had in his pocket, in the form of advance rent, $180 which had been paid to him on the building. It seems quite improbable that in order to persuade Crouch to pay to him $350, five months in advance of the time when, if the latter saw fit to exercise the op *375 tion of purchase contained in the original agreement, he would naturally expect to receive it, he, Schon, would take from his pocket this $180 and pay it over to Crouch as a bonus. If Schon drove a sharp bargain with Crouch, it was at the time of the first transaction, when he induced him to pay $30 a month rent on a building worth $350, and not at the time of the second, when, at most, he induced Crouch to pay $350 for his building, which he, Crouch, appeared to want, five months in advance of the option period. But no complaint is made by Crouch of the first transaction or its terms.
Decided June 10, A. D. 1913.
Rehearing denied July 14, A. D. 1913.
Inasmuch as it seems improbable, if not impossible, for Crouch at this time to maintain an action for the rescission of the contract, for the reason that he has probably sold the stock of goods which he purchased, and therefore could not tender that back, and place the defendant in statu quo, the judgment of the trial court will be reversed with directions to enter judgment for the defendant.

Reversed With Directions.

Morgan, Judge, dissents.